IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>HANDL NEW YORK LLC,<br><br>Debtor. | Chapter 11<br>(Subchapter V)<br><br>Case No. 21-10984 (JKS)<br><br>**Hearing Date: July 28, 2021, 10:00 a.m.**<br>**Objections Due By: July 26, 2021, 4:00 p.m.** |

### DEBTOR'S MOTION FOR DETERMINATION OF
### SECURED CLAIM AND TO ENFORCE THE AUTOMATIC STAY

HANDL New York LLC (the "Debtor"), debtor and debtor-in-possession, files this Motion for Determination of Secured Claim and To Enforce the Automatic Stay (the "Motion"), and in support hereof states as follows:

INTRODUCTORY STATEMENT

1. The Debtor acknowledges that its warehouseman, Replay Storage Solutions ("Replay") has claims against the estate, and some of those claims may be secured by liens on certain of the Debtor's goods currently in the warehouse. Of the invoices supplied to the Debtor by Replay (only days ago, for the first time), there are $8,440.00 in charges for actual storage, and about $50,000 additional amounts asserted for other charges, mostly associated with the packing of other goods that were shipped out and are no longer in Replay's possession. The Debtor needs to use that inventory immediately, however, and can neither pay the grossly

over-inflated amount demanded by Replay nor wait for the results of lengthy litigation to determine what amounts must be paid to satisfy Replay's liens.

    2.    The issues with respect to Replay's asserted liens are as follows:

        i.    If Replay otherwise has a lien, is it defeated by the preexisting perfected security interest asserted by C2 Wireless?

        ii.    Does the lien for storage of a particular good in the warehouse attach to the Debtor's other goods in the warehouse?

        iii.    Does the lien apply only to storage charges, or are the other charges asserted by Replay also subject to the lien?

        iv.    If the lien for storage of a particular good in the warehouse attaches to the Debtor's other goods in the warehouse ***and*** if the lien applies to other charges asserted by Replay besides just storage, are the amounts asserted by Replay correct?

The Debtor submits that the lien for storage of a particular good in the warehouse does ***not*** attach to the Debtor's other goods in the warehouse and that the lien applies ***only*** to the storage charges asserted by Replay. Therefore, it should not be necessary to reach the fourth issue.[1]

    3.    On the basis of off-the-record discussions, the Debtor has doubts whether Replay will release the Debtor's inventory even in the event that the Debtor pays Replay the amount of the lien determined by the Court. Replay's long

---

[1] The Debtor disputes the amount of Replay's invoices because the Debtor believes they are not proper under the storage agreement. Because this Motion is intended simply to resolve the lien issue, the Debtor does not believe it will be necessary to adjudicate the claim amount unless the Court determines that the lien for storage of a particular good in the warehouse attaches to the

periods of silence suggest not merely an intention to protect its storage charges but a desire to harm the Debtor's business operations. To get immediate access to its inventory, the Debtor must also ask for an order enforcing the automatic stay by preventing Replay from continuing to deny the Debtor access to the inventory once that lien is satisfied.

## JURISDICTION

4.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.

5.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.  Authority for the relief requested in this Motion is found at 11 U.S.C. §§ 362 and 506, and Fed. R. Bankr. P. 3012 and 9014.

## BACKGROUND

7.  On June 30, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has managed its affairs and remained in possession of its assets as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108. Jami

---

Debtor's other goods in the warehouse and/or that the lien applies only to charges asserted by Replay other than storage charges.

B. Nimeroff (the "Trustee") has been appointed as Subchapter V trustee in this case.

8. Before the Petition Date, the Debtor manufactured attachable phone holders and stands. Although the Debtor submits that its products are superlative in quality and generated excellent sales prior to the Petition Date, both internal woes and external creditor pressure led to a liquidity crisis that paralyzed the Debtor's ability to continue functioning.

9. As of the Petition Date, the Debtor had approximately $339,249 in account receivables as well as $215,000 in inventory (at cost) in its warehouse. This inventory, if properly delivered to the retailers, has the potential to generate as much as $500,000 in revenue for the Debtor and its estate.

10. This Chapter 11 case was filed to ease the liquidity crisis, provide reasonable protections to a lender under the supervision of this Court, enable the Debtor to restart its sales, and emerge leaner and ready to supply its products.

## RELIEF REQUESTED

11. By this Motion, the Debtor seeks the entry of an order determining that Replay's liens on goods of the Debtor are junior to the blanket lien asserted by C2 Wireless which, if valid,[2] renders Replay's liens completely unsecured.

---

[2] The Debtor became aware of C2 Wireless' asserted security interests only shortly before the Petition Date and is still reviewing its validity, priority, and perfection status.

12. In the alternative, the Debtor seeks the entry of an order determining that Replay's lien on goods of the Debtor attaches only to the extent of storage of those respective goods and not on account of any other alleged services provided by Replay, and that the total amount of liens is not greater than $8,440.00.

13. The Debtor also seeks entry of an order requiring Replay to release the inventory to the Debtor upon payment of the total amount of liens on such inventory, not greater than $8,440.00.

14. Finally, the Debtor also seeks an order requiring Replay to tender possession of the Inventory.

## BASIS FOR RELIEF REQUESTED

15. Pursuant to § 506(a) of the Bankruptcy Code and Fed. R. Bankr. P. 3012, the Debtor is permitted to seek a determination from the Court of the amount of a secured claim. In accordance with Rule 3012(b), this determination shall be made by motion.

16. The burden of proof on a motion to determine a secured creditor's claim follows a "burden-shifting analysis," in which "the debtor bears the initial burden of proof to overcome the presumed validity and amount of the creditor's secured claim, but the ultimate burden of persuasion is upon the creditor to demonstrate by a preponderance of the evidence both the extent of its lien and the value of the collateral securing its claim." *In re Heritage Highgate, Inc.*, 679 F.3d

132, 140 (3rd Cir. 2012) (citations and internal quotations omitted). The Third Circuit's burden-shifting analysis, however, was based upon the observation that "11 U.S.C. § 502(a) and Bankruptcy Rule 3001(f) grant *prima facie* effect to the validity and amount of a properly filed claim." *Id.* (citing *In re Williams,* 381 B.R. 742, 744 (Bankr. W.D.Ark. 2008)). Unlike the *Heritage Highgate* case, however, Replay has not filed proof of claim in this case. Therefore, the Debtor submits that the burden of proof falls on Replay to prove its secured claim against the Debtor's assets.

17. The statute cited by Replay's counsel in its prior statements on the record governing Replay's lien on the Debtor's assets in the Debtor's warehouse (the "Inventory") is the California Warehouseman's Lien statute, California Code, Commercial Code COM § 7209 (the "Lien Statute"). For the reasons that follow, Replay's secured claim against the Debtor's assets is either $0.00 or not more than $8,440.00.

I. REPLAY'S LIEN IS JUNIOR TO THE ALLEGED LIEN OF C2 WIRELESS.

18. C2 Wireless has asserted a blanket lien in excess of $550,000, which, if valid, attached pursuant to a security agreement (a copy of which is attached hereto as **Exhibit A**) on or about April 17, 2019 and was allegedly perfected by the

recording of a financing statement in the Delaware Department of State on April 18, 2019 (a copy of which is attached hereto as **Exhibit B**).

19. The Debtor believes that the value of the Inventory at cost is approximately $215,000 and that value would be only a fraction of that amount if the Inventory were liquidated in distress. Therefore, assuming (for purposes of this Motion only) that C2's claim is validly secured in that amount, there is no equity in the Inventory after accounting for that secured claim.

20. Pursuant to subsection (c) of the Lien Statute:

> the lien or security interest is not effective against a person that before issuance of a document of title had a legal interest or a perfected security interest in the goods and that did not:
>
> (1) deliver or entrust the goods or any document of title covering the goods to the bailor or the bailor's nominee with:
>
>> (A) actual or apparent authority to ship, store, or sell;
>>
>> (B) power to obtain delivery under Section 7403; or
>>
>> (C) power of disposition under Section 2403 or 9320 or subdivision (c) of Section 9321 or subdivision (b) of Section 10304 or subdivision (b) of Section 10305 or other statute or rule of law; or
>
> (2) acquiesce in the procurement by the bailor or its nominee of any document.

21. The Debtor interprets this statutory limitation to give lien priority to the holder of a preexisting security interest over the warehouseman's lien.

Therefore, to the extent that C2's claim is validly secured by the Inventory and to the extent that C2's claim is in excess of $500,000, there is no equity to which Replay's lien may attach even if otherwise valid.

II. **REPLAY'S LIEN ATTACHES ONLY TO GOODS TO THE EXTENT THOSE GOODS INCURRED CHARGES.**

22. Replay has further advised that it will not release the Inventory unless the Debtor pays its prepetition claim in full, asserting that the full amount claimed constitutes a uniform statutory lien on all of the Inventory. In other words, Replay is asserting that the storage charges for one item of Inventory becomes a lien on all the other goods, whether or not those goods had incurred the same storage charge. (For example, the unpaid storage charges asserted by Replay date back to April 2021, but some of the Inventory was not delivered to the warehouse until June 2021)

23. Subsection (a) of the Lien Statute provides, in relevant part, that

> [a] warehouse has a lien against the bailor on the goods covered by a warehouse receipt or storage agreement or on the proceeds thereof <u>in its possession</u> for charges for storage or transportation, including demurrage and terminal charges, insurance, labor, or other charges, present or future, in relation to the goods, and for expenses necessary for preservation of the goods or reasonably incurred in their sale pursuant to law. If the person on whose account the goods are held is liable for similar charges or expenses in relation to other goods whenever deposited ***and it is stated in the warehouse receipt or storage agreement that a lien is claimed for charges and expenses in relation to other goods,*** the warehouse also has a lien against the goods covered by the

> warehouse receipt or storage agreement or on the proceeds thereof in its possession for those charges and expenses, whether or not the other goods have been delivered by the warehouse.  However, as against a person to which a negotiable warehouse receipt is duly negotiated, a warehouse's lien is limited to charges in an amount or at a rate specified in the warehouse receipt or, if no charges are so specified, to a reasonable charge for storage of the specific goods covered by the receipt subsequent to the date of the receipt . . . .

(emphasis added). While it may have been possible for Replay to apply its warehouseman's lien for storage costs on other goods in the warehouse, the italicized language in the quoted statute requires that the storage agreement governing the goods must expressly provide that. The storage agreement between the Debtor and Replay (a copy of which is attached hereto as **Exhibit C**) (the "Storage Agreement") contains no such provision. See also *In re FBI Wind Down, Inc.,* 581 BR 387, 406 (Bankr. D.Del. 2018) (Sontchi, C.J.) ("The warehouse lien can be further extended to include other goods that are not charges for storage or transportation yet are still in the defendant's possession, but for that to be the case the lienholder must have expressly reserved such right in writing") (citation omitted). Therefore, the Court should find that each of the respective goods constituting the Inventory should be subject to a separate lien only to the extent of charges incurred with respect to such respective goods.

9

III.  REPLAY'S LIEN SECURES ITS CLAIM ONLY FOR STORAGE CHARGES AND NOT FOR THE OTHER SERVICES INVOICED.

24. Replay has issued one invoice to the Debtor for storage charges, Invoice CD-7-6-21, asserting a claim in the amount of $8,440.00 for storage during the months of April, May, and June 2021. Subject to the arguments above concerning C2's alleged senior secured claim, the Debtor asserts that this is the maximum warehouseman's lien to which Replay may be entitled against the Inventory.

25. In addition to the invoice referenced above, Replay has supplied the Debtor with numerous other invoices for other services, mostly packing and label charges, in the aggregate amount of $48,911.00 (attached collectively hereto, along with Invoice CD-7-6-21, as **Exhibit D**). Even if these invoices are otherwise valid, the Debtor submits that they do not constitute liens on the Inventory for two reasons.

26. First, the services of packing, labeling, and shipping refer, by definition, to goods that are no longer in Replay's possession. The underlined language emphasized in the statutory quotation above shows that the lien attaches only to assets in the warehouseman's possession.

27. Second, the statutory language refers to a lien for "storage or transportation" and does not include packing, labeling, and shipping of the goods.

Thus, the invoices representing these services should be excluded from Replay's warehouseman's lien, if any.

IV.  REPLAY HAS OVERCHARGED THE DEBTOR.

28. Assuming that the Court finds that Replay's warehouseman's lien is either $0.00 because of C2's asserted secured claim or $8,440.00 for the reasons stated above, that ends the analysis. However, if the Court finds that there is a lien greater than the $8,440.00 storage charges in Invoice CD-7-6-21, the Debtor requests that the Court establish the amount of Replay's lien.

29. Specifically, the Storage Agreement sets forth the rates to which the Debtor agreed to be charged for various services, depending on the kinds of services. For the most part, the agreed rate was $0.50 per unit for "pick and pack" and $0.25 per unit for labeling. Many of these invoices for these services, however, appear to charge between $1.50 and $2.50 per unit for "pick and pack" and $0.40 for labeling. Replay, as the party bearing the burden of proof, should be required to justify the amounts asserted in order to claim a lien for such amounts.

V.  ANY FURTHER ATTEMPT TO WITHHOLD POSSESSION OF THE INVENTORY CONSTITUTES A VIOLATION OF THE AUTOMATIC STAY.

30. Section 362(a) of the Bankruptcy Code contains a stay of certain actions, including but not limited to "any act . . . to exercise control over property of the estate," 11 U.S.C. § 362(a)(3), and "any act to . . . enforce any lien against

property of the estate." § 362(a)(4). Section 541(a) broadly defines property of the estate, which includes "all legal or equitable interests of the debtor in property as of the commencement of the case . . . ." In this case, this includes the Inventory.

31. Upon a determination by the Court of the amount of any lien upon the Inventory, the Debtor intends immediately to tender such amount in cash to Replay and retake possession of the Inventory. Because of some uncertainty about whether Replay will adhere to the "automatic" restrictions of the Bankruptcy Code, the Debtor is requesting an express order from this Court directing that the Inventory be released upon tendering any amount that may be subject to a warehouseman's lien.

WHEREFORE, the Debtor respectfully requests that the Court enter an order:

(A) Determining the amount of Replay's lien on the Inventory as set forth in the proposed order appended hereto;

(B) Ordering Replay to release all Inventory to the Debtor immediately upon the Debtor's tender of funds to pay off that lien, if any; and

(C) Granting the Debtor such further relief as this Court deems just and proper.

Dated: July 20, 2021
      Wilmington, Delaware

Respectfully submitted,

HILLER LAW, LLC

 /s/ **Adam Hiller**
Adam Hiller (DE No. 4105)
1500 North French Street
Wilmington, Delaware 19801
(302) 442-7677 telephone
ahiller@adamhillerlaw.com

*Proposed Attorney for the Debtor*